UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN WILLIAMS, JR.,

              Petitioner,              Case Number 09-13558
                                                     Honorable David M. Lawson

v.

NICK J. LUDWICK,

              Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Steven Williams, Jr., presently confined at the Gus Harrison Correctional Facility in Adrian, Michigan, has filed a petition for a writ of habeas corpus through counsel under 28 U.S.C. § 2254 challenging his convictions of assault with intent to commit great bodily harm, Mich. Comp. Laws § 750.84, and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. The petitioner was found guilty of these crimes at a jury trial in the Wayne County, Michigan circuit court and was sentenced to a prison term of at least 81 months for the assault conviction and a consecutive two-year term for the firearm conviction. The petition raises claims concerning the adequacy of the petitioner's representation at his preliminary examination and the conduct of the prosecutor at his trial. The respondent filed an answer to the petition arguing that the petitioner's first claim was reasonably rejected by the state courts and that review of his second claim is barred by procedural default. The Court finds that neither of the petitioner's claims have merit, and therefore the petition will be denied.

I.

The convictions stem from the shooting of Salvagio Vonatti outside Gigi's Nightclub in Detroit. Vonatti was shot in the head, and throughout the proceedings against the petitioner he was

in coma. The prosecutor's case hinged on one witness, Desmond Caine, who identified the petitioner as the shooter at the preliminary examination, but recanted his testimony at trial.

At the preliminary examination, the petitioner's appointed counsel, James Parker, a public defender, informed the court that his client was unhappy with his services and that the attorney-client relationship had broken down. The Court stated that it would allow Parker to withdraw. Erika Tusar, another attorney from the public defender's office, happened to be in the courtroom that day, and the court asked her if she would accept an appointment to represent the petitioner. Tusar responded:

> I would be more than happy for it — to take it over today. Mr. Parker knows it. If he holds the exam, I would be more than happy to take [the case] once it gets back to the office. That will give me plenty time for to read [sic] and go through it.

Prelim. Exam. Tr., Feb. 22, 2006, at 5.

Parker agreed to continue to represent the petitioner through the preliminary examination, and the record shows that he conducted the cross-examination of the only witness called by the prosecution and argued that the case should not be bound over for trial. Tusar remained present as well. The examining magistrate bound the case over for trial on the charges of assault with intent to commit murder and felony firearm.

At trial, police officer Cecilia Smith testified that on January 10, 2006, she and two other officers responded to a shooting outside Gigi's Nightclub. She saw a man, later identified as Salvagio Vonatti, lying in the street, bleeding from the head and coughing up blood. Smith's partner, police officer Jason Tonti, testified that the man did not appear to have been robbed.

The prosecution's chief witness, Desmond Caine, acknowledged at trial that he testified at the preliminary examination that the petitioner shot Vonatti. But at trial, Caine denied having been with the petitioner on the day of the shooting. Caine testified that on the night in question he was

at home. Caine testified that he had been interrogated three or four times a week by the police for long periods of time, and that he blamed the petitioner for the shooting out of fear. Caine testified that he decided to tell the truth at trial — that he had not seen the petitioner shoot anyone — and that all of his previous statements were lies.

Caine testified that a few days after the shooting he was standing in front of a party store across the street from Gigi's Nightclub. When he saw police approach the store, he took off running, but an officer caught him. When asked why he ran, Caine said he had just been released from jail and did not have identification. Caine testified that he told the police he had information about the Vonatti shooting because the police told him he was going to jail if he did not provide them with information. He said he lied and told them that "G Wilkins" was responsible for the shooting. Caine was then released from custody.

Two days later, Caine learned that the police were looking for him again. He presented himself at the police station and told the police that he had driven by the shooting scene with friends. He said at the time that he had seen a white man lying in the street with blood around his head. At trial, he testified that this statement was false, and he did not drive past the scene with the people he identified to the police.

Caine testified that he was interrogated by the police over the course of several days. At first the police tried to accuse him of committing the crime. He testified that he thought that if he did not give them information, the shooting would be pinned on him. He testified that he was nervous and had failed the first lie detector test he was given. Because the word on the street was that the petitioner was the shooter, Caine decided to tell the police that he saw the petitioner shoot the victim.

Caine told the police that he was with the petitioner at a store across the street from Gigi's Nightclub. He told the police that they were selling marijuana together, and they saw a white man whom they thought was gay. The petitioner called the man a "queer," and then shot him in the head with a small handgun. The man fell down and Caine ran away.

Over objection, the prosecutor then read into the record the testimony Caine gave after he was served with an investigative subpoena. The prosecutor also read into the record his testimony from the preliminary examination.

Caine testified that during the preliminary examination the petitioner made a cutting motion across his throat, which Caine interpreted as meaning that his life was over. Caine also told the jury that he had been staying away from his old neighborhood. Caine testified that he talked with the prosecutor about being a snitch and what happens to snitches on the street. Caine admitted that he did not want to be in court, but he denied being afraid of retaliation.

Sergeant Samer Jaafar testified that on January 12, 2006, he saw a group of people loitering in front of a store across from Gigi's Nightclub. When he approached, Caine ran away. When Jaafar caught Caine, Caine stated, "I didn't shoot the guy by Gigi's, G did it." Jaafar said that Caine told him he was outside of Gigi's with his friend and a "fag" tried to hit on his friend, so his friend pulled out a gun and shot him.

Investigator Fisher testified that he also interrogated Caine. Fisher denied ever threatening Caine, but he acknowledged that Caine was told that he was viewed as a suspect. Fisher testified that Caine knew details of the shooting that could only have been known by witnesses to the shooting, including knowledge of the victim's alternative life style. Caine also gave details as to where the victim suffered the gunshot wound. Fisher testified that the petitioner was arrested at a house on the same street as the shooting. He was found hiding in a crawl space in the house.

Debra Miller-Jones testified for the defense that the petitioner was at her home the night of the shooting. Miller-Jones testified that she was home that night with her husband, twin daughters and grandchildren. Between 7:00 and 8:00 p.m. her son and the petitioner came into the house. They ate dinner and played games in her son's room. When she went to bed at around 10:00 p.m., the boys were still there. She said that her son woke her up around 12:30 or 1:00 a.m. and she could hear the petitioner still in the house.

A witness identified only as "Tiko," age seventeen, testified that in April 2003 he was shot by the petitioner. Tiko was sitting at a table in his home with Albert McCoy and the petitioner, who was playing with a small gun that he had found the day before. The petitioner pointed the gun at McCoy and then at Tiko. The gun went off, and Tiko was shot in the head. Tiko testified that he was afraid of coming to court. Albert McCoy testified to a similar account of that previous shooting.

The jury found the petitioner guilty of the lesser offense of assault with intent to commit great bodily harm and felony firearm.

Following his conviction and sentence, the petitioner filed a direct appeal in the Michigan Court of Appeals and asserted claims of ineffective assistance of counsel, improper admission of similar act evidence, prosecutorial misconduct during closing argument, and improper sentencing procedures. The court of appeals affirmed the petitioner's convictions in an unpublished opinion. *People v. Williams*, No. 272779, 2007 WL 4179322 (Mich. Ct. App. Nov. 27, 2007). The Michigan Supreme Court denied leave to appeal. *People v. Williams*, 481 Mich. 889; 749 N.W.2d 738 (2008).

The petitioner, represented by counsel, then filed his petition for habeas corpus, asserting the following two claims:

    I.      Representation by two counsel, one conflicted and one newly appointed, at a critical stage of the trial process is per se ineffective.

    II.       Rampant prosecutorial misconduct during closing argument deprived Mr. Williams of his constitutional right to a fair trial and due process. Alternatively, his counsel was ineffective for failing to object.

The State filed its answer contending, among other things, that the state courts decided the case properly.

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. The Supreme Court has continued to emphasize the limited nature of this review. In its unanimous decision two terms ago in *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Sixth Circuit observed recently that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012). The *Peak* court suggested that

*Richter* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Ibid.*

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state court rulings, and demands that state court decisions be "given the benefit of the doubt." *Renico v. Lett*, --- U.S. ---, ---, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Peak*, 673 F.3d at 473-74; *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011).

A.

The petitioner's first claim asserts that he was denied his right to the effective assistance of counsel at the preliminary examination because his relationship with his first appointed attorney had broken down and because the attorney ordered to replace him was not prepared to assume representation until after the examination. He reasons that because he was represented by

"conflicted" counsel at the examination, he is not required to demonstrate actual prejudice. The respondent asserts that the state appellate court reasonably decided the claim.

The Michigan Court of Appeals determined that no violation of the Sixth Amendment occurred:

> Defendant first argues that he was denied the assistance of counsel at his preliminary examination. We disagree. "The Sixth Amendment safeguards the right to counsel at all critical stages of the criminal process for an accused who faces incarceration." *People v. Williams*, 470 Mich. 634, 641; 683 N.W.2d 597 (2004). A preliminary examination is a critical stage in the proceedings. *Coleman v. Alabama*, 399 U.S. 1, 9-10 (1970); *People v. Thomas*, 96 Mich. App. 210, 218; 292 N.W.2d 523 (1980).
>
> In this case, original defense counsel notified the trial court that defendant was requesting the appointment of new counsel. Another attorney who was present agreed to serve as defendant's new counsel if original counsel would conduct the preliminary examination. The trial court agreed to allow original counsel to withdraw after conducting the preliminary examination. The trial court stated, without objection, "The record should reflect that both attorneys are present and will remain so during this examination so that [defendant] has the benefit of both counsels." Thus, the trial court effectively ruled that original counsel's withdrawal was not effective until after the preliminary examination. Because defendant was represented by counsel at the preliminary examination and does not raise any issue regarding the effectiveness of counsel's performance at the preliminary examination, we reject this claim of error.

*People v. Williams*, 2007 WL 4179322 , at *1.

The state court of appeals reasonably applied federal constitutional law and reached a proper result. Under established Supreme Court law, claims of ineffective assistance of counsel are normally reviewed under the familiar two-pronged approach set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), wherein a defendant must make a showing of both deficient performance and actual prejudice to his case. *Strickland*, 466 U.S. at 687. In *United States v. Cronic*, 466 U.S. 648, 658 (1984), however, the Supreme Court held that a defendant is entitled to a presumption of prejudice where circumstances arising in a criminal prosecution "are so likely to prejudice the accused that the costs of litigating their effect in a particular case is unjustified."

In *Cronic*, the Supreme Court recognized three situations in which Sixth Amendment violations are "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658. The first situation occurs when the accused "is denied counsel at a critical stage of his trial." *Id.* at 659. The second situation occurs when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Ibid.* However, in order for a presumption of prejudice to arise based on an attorney's failure to test the prosecutor's case, the attorney's failure "must be complete." *Bell v. Cone,* 535 U.S. 685, 697 (2002). The third situation occurs under circumstances "when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 466 U.S. at 659-60. The Court noted that "every refusal to postpone a criminal trial" where counsel has not had an adequate opportunity to prepare "will not give rise to . . . a presumption" of prejudice. *Id.* at 661.

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), identified another type of ineffective assistance of counsel claim that warranted a "similar, though more limited, presumption of prejudice," namely, cases involving an actual conflict of interest that adversely affects counsel's performance. *Strickland*, 466 U.S. at 692 (citing *Cuyler v. Sullivan,* 446 U.S. 335, 348-49 (1980) (holding that to establish a Sixth Amendment violation resulting from the joint representation of multiple defendants by a single attorney, a defendant who fails to object at trial must demonstrate an actual conflict of interest that adversely affected his attorney's performance)).

The petitioner here does not appear to rely on either of the first two types of *per se* Sixth Amendment violations. He had an attorney at his preliminary examination — two of them, actually — and there is no claim that the attorney did not subject the prosecution's case to meaningful

-10-

adversarial testing. In fact, the petitioner has made no effort to identify deficient performance of any sort. Instead, the petitioner's argument, as the Court understands it, is that attorney Parker was "conflicted" and should not have participated, and attorney Tusar did not have time to prepare, so she could not render effective assistance under the circumstances. Under the prevailing authority, however, that argument does not hold up.

The record indicates that although attorney Tusar was present at the preliminary examination, attorney Parker took the lead and provided representation. The petitioner argues that Parker was "conflicted," but the record does not support such a claim. Rather, Parker asked to withdraw because he said that the petitioner was not satisfied with his services and their relationship had "broken down." The record is silent as to the cause or source of that breakdown. But from that conclusory assertion by defense counsel, the petitioner asserts that there was a "conflict." In the context of Sixth Amendment jurisprudence, however, that term generally refers to a circumstance in which counsel is confronted by divided loyalties.

The rule that proof of prejudice is excused when the lawyer is burdened by a conflict of interest has been limited to cases where the conflict arises from multiple representation. *Mickens v. Taylor*, 535 U.S. 162, 172-74 (2002). In *Mickens*, the Court refused to extend the rule beyond that factual circumstance, stating that although the *Cuyler* rule had been applied "unblinkingly" to various kinds of conflicts of interest that did not involve multiple representation, *Cuyler* "does not clearly establish, or indeed even support, such expansive application." *Id*. at 175. The Court further reasoned that *Cuyler* and *Holloway v. Arkansas*, 435 U.S. 475 (1978), "stressed the high probability of prejudice arising from multiple concurrent representation, and the difficulty of proving that prejudice." *Ibid*. However, the Court believed that "[n]ot all attorney conflicts present comparable

difficulties" and concluded that it remained an "open question" whether *Cuyler* should be extended to cases other than multiple representation. *Id.* at 176.

After *Mickens*, the Sixth Circuit has been reluctant to apply the *Cuyler* rule to conflicts of interest that do not arise from multiple representation. In *Smith v. Hofbauer*, 312 F.3d 809, 817 (6th Cir. 2002), the court held that a habeas petitioner was not relieved of the requirement of showing prejudice under *Cuyler* for an ineffective assistance of counsel claim based a conflict of interest that arose from other than multiple representation. Other cases have come to the same conclusion. *See Harrison v. Motley*, 478 F.3d 750, 756-57 (6th Cir. 2007) (holding that neither *Cuyler* nor *Holloway* applied to the petitioner's claim that his lawyers had a conflict of interest in representing him based on their fears of criminal prosecution and malpractice for witness tampering); *Stewart v. Wolfenbarger*, 468 F.3d 338, 351 (6th Cir. 2006) ("This Court has consistently held that, for Section 2254 cases, the *Cuyler* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland* standard applies."); *Whiting v. Burt*, 395 F.3d 602, 619 (6th Cir. 2005) (finding the presumed prejudice standard inapplicable to an attorney's alleged conflict from representing the petitioner at trial and on appeal); *Moss v. United States*, 323 F.3d 445, 473 n.25 (6th Cir. 2003) ("As we have discussed, supra, the *Mickens* rationale compels our strong hesitation to apply *Cuyler* to conflicts of interest cases arising outside of the joint representation context."). In this case, expanding the presumed prejudice standard of *Cuyler v. Sullivan* "beyond its present borders of multiple concurrent representation would result in the creation of a new rule of law — one that clearly has not been dictated by prior Supreme Court precedent." *Whiting*, 395 F.3d at 619-20.

Because the difficulty the petitioner had with his first assigned attorney did not result from multiple concurrent representation of joint defendants at the same proceeding, the presumed

-12-

prejudice rule of *Cuyler v. Sullivan* is inapplicable to the petitioner's claim. Instead, the proper standard is the *Strickland* standard, in which the petitioner must demonstrate deficient performance and that he was actually prejudiced.

The petitioner does not make a serious attempt to demonstrate actual prejudice, and for good reason. A fair review of the preliminary examination record shows that attorney Parker vigorously and effectively represented him during that proceeding. The prosecutor presented only one witness, Desmond Caine, at that hearing, and attorney Parker engaged in a spirited cross-examination suggesting that Caine falsely accused the petitioner of the shooting. That was essentially the same defense that was pursued by the petitioner's new attorney at trial. The petitioner points out that Caine's testimony at the preliminary examination proved to be critical at trial due to his recantation, which of course is true, but he does not allege how Parker's performance during his cross-examination of Caine resulted in prejudice. The petitioner also refers to the incident when he apparently made a threatening gesture at Caine during the preliminary examination, but he can hardly shift the blame for his own misconduct and suggest that his attorney was somehow responsible to control the antics of his client. The petitioner has failed to demonstrate that his attorney performed deficiently at the preliminary examination or that he was somehow prejudiced by his counsel's conduct at that proceeding. The first claim, therefore, fails.

B.

The petitioner's second claim asserts that the prosecutor committed misconduct. He asserts that the prosecutor vouched for the credibility of his witnesses and incited the passions and sympathies of the jury. The respondent asserts that review of the claim is barred by the petitioner's failure to preserve the claim in the trial court by contemporaneous objection. Because the petitioner asserts that his trial counsel was ineffective by failing to object to the misconduct, efficiency

suggests that the Court simply address the merits of the claim. *See Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious that it rendered the entire trial fundamentally unfair based on the totality of the circumstances. *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"), *abrogated on other grounds by Mackey v. Dutton*, 217 F.3d 399, 406 (6th Cir. 2000). The first question to consider is whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006). If they were, the court must decide whether the improper acts were so flagrant as to warrant relief. *Ibid.* Flagrancy depends on four factors: 1) whether the actions "tended to mislead the jury or prejudice the defendant"; 2) whether the actions were isolated or represent a pervasive course of conduct; 3) whether the acts represent a deliberate attempt to affect the outcome of the case; and 4) the overall strength of the case. *Millender*, 376 F.3d at 528. The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982) (citing *Hayton v. Egeler*, 555 F.2d 599, 604 (6th Cir. 1977)). The Court focuses on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). "The Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial

misconduct cases] is necessarily imprecise.'" *Slagle*, 457 F.3d at 516 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)).

The Michigan Court of Appeals denied relief with respect to the petitioner's claim with these words:

> Defendant next argues that the prosecutor's conduct during closing argument denied him a fair trial. Because defendant failed to object to the prosecutor's conduct at trial, we review this issue for plain error affecting defendant's substantial rights. *Carines*, *supra* at 763-764. Defendant first argues that the prosecutor impermissibly vouched for the credibility of the police. A prosecutor may not suggest that she has special knowledge regarding the veracity of witnesses. *People v. Matuszak*, 263 Mich. App. 42, 54-55; 687 N.W.2d 342 (2004). However, a prosecutor's argument from the facts and testimony that certain witnesses are not worthy of belief does not constitute improper vouching for the credibility of witnesses. *See Dobek*, *supra* at 67.
>
> The prosecutor stated that the police did their investigation and followed up on every angle. This remark was a fair comment based on the evidence presented at trial. A prosecutor is free to argue the evidence and all reasonable inferences arising from it. *Id.* Investigator Fisher testified that he conducted an investigation, which included verifying the accuracy of the witnesses' numerous statements. As a result, he was comfortable in determining that defendant was the shooter. The prosecutor also stated that the police would never jeopardize their case by threatening a witness in the manner described by a witness at trial. At trial, Sergeant Jaafar and Investigator Fisher both testified that they did not threaten the witness. Sergeant Jaafar also testified that he did not arrest the witness on an outstanding misdemeanor warrant because the witness had valuable information about a homicide. Considered in context, the prosecutor's comments were based on the evidence and reasonable inferences arising from the evidence. The prosecutor did not suggest that she had special knowledge of the witness's veracity.
>
> Defendant also argues that the prosecutor impermissibly argued facts not in evidence when she referred to statements by two non-testifying witnesses. We disagree. The prosecutor did not divulge any information that was not either contained in Investigator Fisher's testimony or reasonably inferred from it. Lastly, defendant argues that the prosecutor improperly appealed to the jury's sympathy when she stated, "Sal can't be here today to tell us who did this to him and you are going to have to stand up and be his voice today." We do not characterize this remark as an improper appeal to sympathy. In fact, the prosecutor specifically urged the jury to decide the case based on the evidence, not sympathy.

> Finally, contrary to the assertion made in defendant's brief on appeal, any prosecutorial misconduct of the type alleged by defendant in this regard could have been cured by a timely instruction. A curative instruction is generally sufficient to dispel the prejudicial effect of inappropriate prosecutorial statements, *People v. Humphreys*, 24 Mich. App. 411, 414-415; 180 N.W.2d 328 (1970), and jurors are presumed to follow their instructions, *People v. Mette*, 243 Mich. App. 318, 330-331; 621 N.W.2d 713 (2000).
>
> We find no plain error in the prosecutor's closing remarks. *Carines*, *supra* at 763-764. Therefore, defendant's related ineffective assistance of counsel claim also fails. *See People v. Mack*, 265 Mich. App. 122, 130; 695 N.W.2d 342 (2005).

*People v. Williams*, 2007 WL 4179322 , at *3-4.

That decision reasonably applied governing law to the facts developed in the record.

The petitioner first asserts that the prosecutor vouched for the credibility of his witnesses and injected facts into his closing argument that were not supported by the evidence presented at trial. During closing arguments, the prosecutor addressed the police officers' decision to drop a "fifty-dollar misdemeanor ticket" against Caine in order to obtain information about the shooting. Trial Tr., July 19, 2006, at 45, 71. The prosecutor stated that any judge would find that the importance of such information outweighed the charge against Caine. The prosecutor also praised the work of the police and said that they "did the right things here," and that they would not have risked jeopardizing the investigation by threatening Caine as the defense suggested. *Id.* at 46. Finally, the prosecutor stated during closing argument that Caine did not obtain his information about the shooting from other people because "[t]he two people he claimed he was with on January 14th as he drove by, when they were questioned, they told Investigator Fisher we could see a body lying, but we couldn't see anything about it because it was closed off." *Id.* at 44.

A prosecutor may not express a personal opinion concerning the credibility of trial witnesses, because such vouching for the veracity of witnesses "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent

assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir.1999). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999) (citations omitted); *see also Griffin v. Berghuis,* 298 F. Supp. 2d 663, 674-75 (E.D. Mich. 2004).

Several cases have held that a prosecutor does not engage in vouching by arguing that his witnesses have no reason or motivation to lie, when such comments are based on the evidence and do not reflect a personal belief of the prosecutor. *See United States v. Jackson,* 473 F.3d 660, 672 (6th Cir. 2007); *United States v. Israel*, 133 F. App'x 159, 165 (6th Cir. 2005); *United States v. Parker,* 49 F. App'x 558, 563 (6th Cir. 2002); *see also Alder v. Burt,* 240 F. Supp. 2d 651, 669 (E.D. Mich. 2003) (prosecutor did not engage in improper vouching when he argued that there was no evidence that prosecution witness had "axe to grind" or any other improper motive, when he asked rhetorically whether person who would burn 19-year-old female's body to destroy evidence would give truthful testimony, or when he asked whether prosecution witnesses had any reason to lie).

The challenged arguments concerning the credibility of Caine were based on his testimony as well as the testimony of the police officers and did not suggest that the prosecutor had hidden knowledge. Investigator Fisher testified that his investigation included verifying the accuracy of the witnesses' several statements, and as a result he determined that the petitioner was the shooter. Sergeant Jaafar and Investigator Fisher both testified that they did not threaten Caine in order to obtain his statements. And Sergeant Jaafar testified to his reasons for not arresting Caine on the misdemeanor charge. The argument that Caine truthfully recounted the shooting was based on the

testimony that he provided details to the police that they believed only a person present at the shooting would have known. The argument that the police officers testified truthfully was based on their testimony regarding the thoroughness of their investigation.

Although the prosecutor did refer to statements made by two individuals who did not testify at trial, Fisher testified that those two people told him that they saw the victim in the street but could not see anything related to the shooting. Trial Tr., July 18, 2006, at 217. The prosecutor's argument was a fair summary of Fisher's testimony and was not based on facts outside of the trial record.

Last, "arguments that encourage juror identification with crime victims are improper." *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008). A prosecutor acts improperly when the prosecutor "calls on the jury's emotions and fears — rather than the evidence — to decide the case." *Ibid*. The prosecutor's reference to the victim "paying for what happened to him" and stating that "Sal can't be here today to tell us who did this to him and you are going to have to stand up and be his voice today," were unfortunate and may have evoked sympathy for the victim, but the prosecutor did not ask the jury to convict on that basis. The statement was made in relation to the prosecutor's lament that her only witness was not "some nice young squeaky clean man" but that he should nevertheless be believed. The argument was improper, but it was not so flagrant so as to render the petitioner's trial unfair.

The petitioner's contention that the prosecutor's conduct rendered his trial unfair does not warrant habeas relief.

### III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not

established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

                                                s/David M. Lawson  
                                                DAVID M. LAWSON  
                                                United States District Judge

Dated:   January 15, 2013

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 15, 2013.

                            s/Shawntel Jackson  
                            SHAWNTEL JACKSON